IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:25-CR-52-KAC-JEM |
| | ) | |
| BERNARD ALLEN WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions are referred to the undersigned for disposition or recommendation as appropriate. *See* 28 U.S.C. § 636(b). This case is before the undersigned on Defendant Bernard Wilson's Motion to Suppress and Memorandum in Support [Doc. 18]. Defendant asks the Court to suppress evidence seized during the execution of search warrants at 5401 Avebury Lane, Knoxville, Tennessee,[1] and 4312 Greenway Drive, Knoxville, Tennessee, on July 18, 2024, arguing the affidavits in support of the search warrants lack probable cause [Doc. 18 p. 1]. On that basis, Defendant seeks the suppression of all evidence seized during the execution of the search warrants as "fruit of the poisonous tree" [*Id.*].

The Indictment charges Defendant with distributing a quantity of a mixture and substance containing a detectable amount of fentanyl on or about May 8, 2024 (Count One); distributing a quantity of a mixture and substance containing a detectable amount of fentanyl on or about June 18, 2024 (Count Two); distributing a quantity of a mixture and substance containing a detectable amount of fentanyl on or about July 12, 2024 (Count Three); possession with intent to distribute

---

[1] Defendant's Motion to Suppress references the residence as Averbury Lane, but the search warrant and affidavit refer to the residence as Avebury Lane [Docs. 18-1 & 18-2]. The Court therefore adopts the spelling of the address as referenced in the search warrant and affidavit.

400 grams or more of a mixture and substance containing a detectable amount of fentanyl on or about July 18, 2024 (Count Four); possession with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, on or about July 18, 2024 (Count Five); possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine on or about July 18, 2024 (Count Six); possession of firearms in furtherance of a drug trafficking offense on or about July 18, 2024 (Count Seven); and possession of a firearm by a felon on or about July 18, 2024 (Count Eight) [Doc. 1 pp. 1–3]. These charges arise in part from the execution of search warrants at a residence at 5401 Avebury Lane and a business at 4312 Greenway Drive [Docs. 18-2 & 18-4].

Defendant moves to suppress all evidence seized during the execution of the search warrants as fruit of the poisonous tree [Doc. 18 p. 1]. Defendant contends the supporting affidavits fail to establish probable cause to believe that drugs or evidence of a crime would be located at either address [*Id.*]. Specifically, Defendant argues the affidavits lack a sufficient nexus between the locations to be searched and evidence of drug trafficking [*Id.* at 3]. He alleges the confidential informant ("CI") within the affidavits was not sufficiently reliable and the CI's information for the Avebury Lane address was stale [*Id.*]. Defendant further argues the officer seized items outside the scope of the search warrants at the Avebury Lane address [*Id.*]. Defendant also argues good faith does not save the warrants because the affidavits were bare bones [*Id.* at 13].

After reviewing the evidence, the arguments of the parties, and the relevant law, the undersigned finds the affidavits contain probable cause, including a sufficient nexus to believe evidence of drug trafficking would be found at both locations, sufficient information supporting the reliability of the CI, and the information provided by the CI on the Avebury Lane address was not stale. The undersigned also finds the jewelry seized from the Avebury Lane address was within

2

the scope of the search warrant, but the clothing and CDs seized in the execution of the Avebury Lane warrant were not. Finally, even if probable cause was lacking for the warrants, the undersigned finds the officers executed the search warrants in good faith. The undersigned therefore recommends that the District Judge **GRANT IN PART** and **DENY IN PART** Defendant's motion to suppress.

## I.    BACKGROUND

Knox County Sheriff's Office ("KCSO") Detective Matthew Johnson submitted affidavits in support of applications for search warrants for 5401 Avebury Lane, Knoxville, Tennessee ("the residence") [Doc. 18-1 p. 12] and 4312 Greenway Drive, Knoxville, Tennessee ("the business") [Doc. 18-3 p. 12]. In his affidavits, Detective Johnson's statements of probable cause outlined the investigation into Defendant Wilson's alleged drug trafficking activities, which involved the distribution of fentanyl [Doc. 18-1 pp. 4–7; Doc. 18-3 pp. 4–7].

Detective Johnson explained that in 2024, a CI provided information about Defendant's involvement in a drug trafficking operation in Knoxville, Tennessee [Doc. 18-1 p. 4; Doc. 18-3 p. 4]. The CI had not previously worked with law enforcement and was untested, and the CI worked with the KCSO for consideration in the CI's own pending criminal case [Doc. 18-1 p. 3; Doc. 18-3 p. 3]. The CI also provided incriminating information about himself[2] during the investigation [*Id.*]. Detective Johnson questioned the CI about the appearance, price, use and effects of fentanyl, and the CI's responses demonstrated "an in-depth knowledge" of fentanyl distribution in the Knoxville area [*Id.*]. The CI named Defendant and Ashley Sanders ("Ms. Sanders") during the investigation and identified photographs of them [*Id.*]. KCSO

---

[2]    The affidavits do not state the gender of the CI. For economy of reference, the undersigned refers to the CI as a male.

detectives corroborated the information from the CI and determined the information to be reliable and true [*Id.*].

Detective Johnson also identified Defendant and noted that, at the time, he was on state probation in Michigan and Tennessee for drug-related felonies [*Id.*]. He used the CLEAR database to identify 5401 Avebury Lane as Defendant's residential address in Equifax and Experian credit history checks on February 21, 2022, and November 2, 2023 [*Id.*]. The CI also identified 5401 Avebury Lane as Defendant's residence [*Id.*].

Detective Johnson identified Ms. Sanders [*Id.*]. He noted that her address according to her driver's license is also 5401 Avebury Lane and, according to Knoxville Utility Board records, she has utilities at that address [*Id.*]. In addition, he stated that she is the registered owner of a purple Dodge Challenger with Tennessee registration [*Id.*].

The affidavits were incorporated by reference into the search warrants issued by the Magistrate of the General Sessions Court for Knox County, Tennessee, on July 17, 2024 [Doc. 18-2 pp. 2–3; Doc. 18-4 pp. 2–3].

### A.    The Affidavit in Support of the Search of the Residence

The CI informed the KCSO he had been regularly purchasing fentanyl from Defendant and members of his organization for "no less than 2 years" [Doc. 18-1 p. 4]. According to the CI, Defendant used an auto garage on Greenway Drive "to facilitate the distribution of fentanyl during daytime hours while appearing to own a legitimate business" [*Id.*]. The CI purchased fentanyl from Defendant at the Greenway Drive address "numerous times during the past two calendar years" [*Id.*]. The CI also stated he witnessed large quantities of fentanyl and methamphetamine at the Greenway Drive business [*Id.*]. The CI further stated Defendant did not typically sell drugs until he arrived at the Greenway Drive business for the day [*Id.*].

4

In addition, the CI identified 5401 Avebury Lane as Defendant's residence [*Id.*]. The CI stated he had purchased fentanyl from Defendant while inside Defendant's Avebury Lane residence within the past two calendar years [*id.*], and officers confirmed through the CLEAR database that Defendant listed the Avebury Lane address as his residence on credit reports [*Id.* at 3].

The CI further stated he purchased drugs from Defendant and from Ms. Sanders, at the direction of Defendant when Defendant was low on his supply [*Id.*] The CI met Ms. Sanders in a commercial parking lot in close proximity to the residence [*Id.*].

According to the CI, both Defendant and Ms. Sanders used a purple Dodge Challenger to facilitate drug sales [*Id.* at 4]. Detective Johnson stated he surveilled the residence and the business and observed the purple Dodge Challenger with Tennessee registration BHX6918 regularly parked at the business on Greenway Drive during daytime hours [*Id.*]. Detective Johnson stated the same vehicle is often parked at 5401 Avebury at other hours of the morning, late evening, and night [*Id.*]. Detective Johnson said he also located a silver Nissan Sentra with Florida registration at the Greenway Drive business address on two occasions [*Id.*]. He stated the registered owner is believed to be a relative of Ms. Sanders [*Id.*]. The affiant attached a photograph from December 2023 of both the Dodge Challenger and the Nissan Sentra parked in the driveway of the residence [*Id.* at 14; Doc. 18-2 p. 4]. Detective Johnson stated the Challenger and the Nissan were used to facilitate fentanyl sales during the controlled buys [Doc. 18-1 pp. 4–5].

The affiant states the CI participated in three controlled buys from Defendant in conjunction with law enforcement [*Id.*]. The first buy was within 100 days of the search warrant application [*Id.* at 6]. Detective Johnson stated he searched the CI's car before and after the transaction to ensure there was no contraband other than the narcotics purchased from Defendant

[*Id.*]. Detective Johnson observed Ms. Sander's purple Dodge Challenger arrive at a commercial parking lot in east Knoxville, and the CI engaged in a hand-to-hand transaction with the driver of the Challenger [*Id.*] After the transaction, Detective Johnson followed the purple Challenger and observed Defendant exit the vehicle at a gas station before getting back into the vehicle and returning to the Greenway Drive business [*Id.*]. Detective Johnson confirmed through a mobile narcotics analysis test that the substance the CI purchased from Defendant was fentanyl [*Id.*].

Detective Johnson also observed the second buy, conducted within 50 days of the application for the search warrant [*Id.* at 5]. Again, Detective Johnson stated he searched the CI's car before and after the transaction for contraband other than the narcotics obtained through the controlled buy [*Id.*]. Prior to the buy, KCSO detectives observed Defendant exit the Greenway Drive business, get in Ms. Sanders's Challenger, and drive directly to the commercial parking lot to meet the CI [*Id.*]. Detectives observed a hand-to-hand transaction, and Detective Johnson observed the CI leave the parking lot and drive directly to Detective Johnson's location with a tightly packaged corner of a sandwich bag containing a substance consistent with fentanyl [*Id.*]. The substance tested positive for fentanyl through a mobile narcotics test [*Id.*].

The final controlled buy occurred within five days of the affidavit [*Id.*]. Detective Johnson again searched the CI's car before and after the transaction and found no contraband other than what was obtained through the buy [*Id.*]. KCSO detectives observed Defendant leave the business on Greenway Drive and enter the silver Nissan Sentra previously observed at the Avebury Lane residence [*Id.*]. Detectives then watched the vehicle travel directly to the commercial parking lot and park next to the CI [*Id.*]. Detectives observed a hand-to-hand transaction between individuals in the CI's vehicle and the Nissan [*Id.*]. After the transaction, detectives continued watching the

6

CI until he handed detectives a bag containing a tan powder substance [*Id.*]. A mobile narcotics test showed positive detection for fentanyl [*Id.*].

Detective Johnson outlined his knowledge and experience with drug investigations [*Id.* at 7–11]. Based upon his eight years of experience with the KCSO [*id.* at 2], he explained that drug trafficking organizations frequently use neutral locations detached from bulk drug supplies to facilitate the distribution of narcotics [*Id.* at 6]. He stated drug dealers often choose legitimate businesses or commercial locations as a front to disguise illegal activities and to launder cash from drug sales [*Id.*]. He explained additional and separate locations are then needed to store cash, drugs, and proceeds, and to repackage the narcotics [*Id.*]. In Detective Johnson's experience, the most common and convenient place for processing and repackaging is the dealer's residence [*Id.* at 7]. Detective Johnson stated his belief that Defendant used the residence at 5401 Avebury Lane to facilitate the distribution of fentanyl in Knoxville, Tennessee [*Id.*].

Detective Johnson concluded after his investigation that Defendant and Ms. Sanders resided at 5401 Avebury Lane [*Id.*]. He believed Defendant and Ms. Sanders possessed and sold fentanyl and possessed or stored proceeds of illegal drug sales at the Avebury residence [*Id.* at 12]. He also concluded the Avebury Lane residence contained evidence of the possession, sale, packaging, processing, and delivery of illegal drugs [*Id.*].

Based upon this information, Detective Johnson sought to search the residence for evidence of drug trafficking to include illegal narcotics and substances used with illegal narcotics and other illicit substances [Doc. 18-2 pp. 1–2]. The search warrant authorized seizure of controlled substance paraphernalia and items such as scales, mixing devices, and packaging materials [*Id.* at 1]. The warrant authorized seizure of electronic devices, cellular phones, memory cards, cell phone SIM cards, personal and tablet computers, computer discs and drives, and any recording

7

devices [*Id.*]. The warrant also allowed the seizure of electronic or paper records, any receipts of purchases facilitating offenses such as storage units, lockers, or "cryptocurrency" transactions, as well as keys to storage facilities and safes [*Id.*]. The search warrant also authorized seizure of bank records that would indicate a location of currency storage that may be subject to seizure, any books and documents adapted and used for the purpose of producing or handling controlled substances or for recording transactions involving controlled substances [*Id.* at 2]. The warrant authorized seizure of "[a]ny indicia of ownership, dominion, or control over premises to be searched such as rental receipts, mortgage receipts, mortgage payments, utility bills, photographs of any persons involved in criminal conduct" as well as financial records pertaining to the disposition of proceeds [*Id.*]. It also authorized seizure of "[a]ny goods or instruments used to facilitate or constituting proceeds from the violation of the criminal laws specified above" and any items used to conceal the offenses or used to prevent its discovery [*Id.*]. The warrant authorized seizure of any weapons, ammunition, ammunition magazines, and vehicles reasonably believed to be associated with the commission or facilitation of the offenses, and any person located at 5401 Avebury Lane if probable cause exists to believe they are material participants in the offenses [*Id.*].

### B. The Affidavit in Support of the Search of the Business

Detective Johnson and the KCSO also received a warrant to search the business located at 4312 Greenway Drive based on Detective Johnson's affidavit [Docs. 18-3 & 18-4]. Detective Johnson stated "there is probable cause and reasonable grounds for believing that Bernard Allen Wilson . . . will have in his possession or under his control certain evidence of a crime" [Doc. 18-3 p. 1]. In his affidavit, Detective Johnson stated his belief that illegal drug activity "is occurring/has occurred at a commercial auto garage located at 4312 Greenway Drive, Knoxville, Knox County, Tennessee" [Doc. 18-3 p. 2]. The affidavit includes photos of the business as well

as a map of the area [*Id.* at 13–15; Doc. 18-4 pp. 4–5] The affiant states that, according to the CLEAR database, Defendant uses 4312 Greenway Drive as his residential address for credit history checks in February 2022 and November 2023 [Doc. 18-3 p. 3]. The CI identified 4312 Greenway Drive as Bernard Wilson's residence [*Id.* at 3].

In early 2024, the CI provided information that Defendant leads a fentanyl trafficking operation in Knoxville, and the CI stated he had been regularly purchasing fentanyl from Defendant and other members of his organization for no less than two years [*Id.* at 4]. The CI stated Defendant uses an auto garage at 4312 Greenway Drive to facilitate the distribution of fentanyl during the daytime while appearing to own a legitimate business [*Id.*]. The affiant stated the CI purchased fentanyl from Defendant at 4312 Greenway Drive numerous times during the past two calendar years [*Id.*]. The CI witnessed pound-quantities of fentanyl and methamphetamine in Defendant's possession at this address [*Id.*]. The CI stated Defendant and other members of his organization maintain regular working hours in the garage and make an effort to appear to be a legitimate business [*Id.*]. The CI also stated Defendant does not typically sell drugs until he has arrived at 4312 Greenway Drive for the day [*Id.*].

The affiant stated the CI identified 4312 Greenway Drive as Defendant's residence and stated they purchased fentanyl from Defendant while inside the residence within the past two calendar years [*Id.*]. The CI stated on at least two occasions within the past year, Defendant directed Ms. Sanders to sell fentanyl to the CI when Defendant was low on his fentanyl [*Id.*]. The CI stated he met Ms. Sanders to buy fentanyl in a commercial parking lot close to 4312 Greenway Drive [*Id.*]. The CI reported Defendant and Ms. Sanders both use a purple Dodge Challenger registered to Ms. Sanders to facilitate drug sales [*Id.*].

9

Detective Johnson stated he surveilled the addresses at Avebury Drive and Greenway Drive and observed the purple Dodge Challenger with Tennessee registration BHX6918 regularly parked at the business on Greenway Drive during daytime hours [*Id.*]. Detective Johnson stated the same vehicle is often parked at 5401 Avebury Lane at other hours of the morning, late evening, and night [*Id.*]. Detective Johnson stated he also located a silver Nissan Sentra with Florida registration at the Greenway Drive business address on two separate occasions. He stated the registered owner of the Sentra is believed to be a relative of Ms. Sanders [*Id.*]. In December 2023, Google captured a photograph[3] of both the Dodge Challenger and the Nissan Sentra parked in the driveway of 4312 Greenway Drive [*Id.*]. Detective Johnson stated Defendant used both the Challenger and the Sentra to facilitate fentanyl sales during the controlled buys [*Id.* at 4–5].

Detective Johnson's affidavit details three controlled buys by the CI using cash provided by the KCSO Narcotics Unit [*Id.* at 5]. The first buy was within 100 days of the search warrant application [*Id.* at 6]. Detective Johnson stated he searched the CI's car before and after the transaction to ensure there was no contraband other than the narcotics purchased from Defendant [*Id.*]. Detective Johnson observed Ms. Sanders's purple Dodge Challenger arrive at a commercial parking lot in east Knoxville, and the CI engaged in a hand-to-hand transaction with the driver of the Challenger [*Id.*] After the transaction, Detective Johnson followed the purple Challenger and observed Defendant exit the vehicle at a gas station before getting back into the vehicle and returning to the Greenway Drive business [*Id.*]. Detective Johnson confirmed through a mobile narcotics analysis test that the substance the CI purchased from Defendant was fentanyl [*Id.*].

---

[3]     The affiant states this photograph is attached as Exhibit A [Doc. 18-3 p. 4], but the photograph of the vehicles is not attached to the affidavit for the business.

Detective Johnson also observed the second buy, conducted within 50 days of the application for the search warrant [*Id.* at 5]. Again, Detective Johnson stated he searched the CI's car before and after the transaction for contraband other than the narcotics obtained through the controlled buy [*Id.*]. Prior to the buy, KCSO detectives observed Defendant exit the Greenway Drive business, get in the purple Dodge Challenger that was registered to Ms. Sanders at the Avebury Lane address, and drive directly to the commercial parking lot to meet the CI [*Id.*]. Detectives observed a hand-to-hand transaction, and Detective Johnson observed the CI leave the parking lot and drive directly to Detective Johnson's location with a tightly packaged corner of a sandwich bag containing a substance consistent with fentanyl [*Id.*]. The substance tested positive for fentanyl in a mobile narcotics test [*Id.*].

The final controlled buy occurred within five days of the affidavit [*Id.*]. Detective Johnson again searched the CI's car before and after the transaction and found no contraband other than what was obtained through the buy [*Id.*]. KCSO detectives observed Defendant leave the business on Greenway Drive and enter a silver Nissan Sentra with the same Florida registration as the one observed at the Avebury Lane residence [*Id.*]. Detectives then watched the vehicle travel directly to the commercial parking lot and park next to the CI [*Id.*]. Detectives observed a hand-to-hand transaction between individuals in the CI's vehicle and the Nissan [*Id.*]. After the transaction, detectives continued watching the CI until he handed detectives a bag containing a tan powder substance, which tested positive for fentanyl during a mobile narcotics test [*Id.*].

In his affidavit, Detective Johnson stated his background as it pertains to his knowledge and experience in drug investigations [*Id.* at 7–11]. Based on Detective Johnson's eight years of experience as a KCSO officer [*id.* at 2], he outlined typical operations of drug trafficking organizations [*Id.* at 6]. He explained that organizations frequently use neutral locations detached

11

from bulk drug supplies to facilitate the distribution of narcotics [*Id.*]. He stated drug dealers often choose legitimate businesses or commercial locations as a front to disguise illegal activities and to launder cash from drug sales [*Id.*]. He explained additional and separate locations are then needed to store cash, drugs, and proceeds, and to repackage the narcotics [*Id.*]. In Detective Johnson's experience, the most common and convenient place for processing and repackaging is their residence [*Id.* at 7]. Detective Johnson stated his belief that Defendant used 4312 Greenway Drive to facilitate the distribution of fentanyl in Knoxville, Tennessee [*Id.*]. Detective Johnson's affidavit concluded that Defendant worked at the Greenway Drive business, possessed fentanyl at the Greenway Drive business, and sold fentanyl in Knoxville [*Id.* at 12]. He further concluded that evidence of the possession, sale, packaging, processing, and delivery of illegal drugs was at the Greenway Drive business [*Id.*].

Based upon this information, the search warrant authorizes the search of Defendant and the business located at 4312 Greenway Drive [Doc. 18-4 p. 3]. The warrant authorizes the search for evidence of drug trafficking to include illegal narcotics and substances used with illegal narcotics and other illicit substances [*Id.* at 1]. The search warrant also includes controlled substance paraphernalia and items such as scales, mixing devices, and packaging materials [*Id.* at 1]. The warrant includes electronic devices, cellular phones, memory cards, cell phone SIM cards, personal and tablet computers, computer discs and drives, and any recording devices [*Id.*]. The warrant also allows the seizure of electronic or paper records, any receipts of purchases facilitating offenses such as storage units, lockers, or "cryptocurrency" transactions, as well as keys to storage facilities and safes [*Id.*]. The search warrant also includes bank records that would indicate a location of currency storage that may be subject to seizure, any books and documents adapted and used for the purpose of producing or handling controlled substances or for recording transactions

12

involving controlled substances [*Id.* at 2]. The warrant includes authorization to seize "[a]ny indicia of ownership, dominion, or control over premises to be searched such as rental receipts, mortgage receipts, mortgage payments, utility bills, photographs of any persons involved in criminal conduct" as well as financial records pertaining to the disposition of proceeds [*Id.*]. It also lists "[a]ny goods or instruments used to facilitate or constituting proceeds from the violation of the criminal laws specified above" and any items used to conceal the offenses or used to prevent its discovery [*Id.*]. The warrant includes any weapons, ammunition, ammunition magazines, and vehicles reasonably believed to be associated with the commission or facilitation of the offenses, and any person located at 4312 Greenway Drive where probable cause exists to believe the person is a material participant in the offenses [*Id.*].

### C.      Parties' Positions

Defendant moves to suppress all evidence seized during the execution of the search warrants based on his contention that the supporting affidavits fail to establish probable cause that officers would find drugs or evidence of a crime at either address [Doc. 18 p. 1]. Defendant argues the affidavits lack a sufficient nexus and alleges an unreliable CI provided stale information about the Avebury Lane address [*Id.* at 3]. Defendant further argues the officers exceeded the scope of the search warrants at the Avebury Lane address [*Id.*]. And Defendant argues good faith does not save the warrants because the affidavits were bare bones [*Id.* at 13].

The Government opposes Defendant's motion arguing the affidavits in support of the search warrant established a nexus between each address and drug activity [Doc. 22 p. 6]. It also contends the CI was reliable based on accurate information relayed to and corroborated by law enforcement [*Id.* at 11–13]. The Government disputes Defendant's staleness argument, arguing the ongoing criminal activity defeats any claim of staleness and all items seized pursuant to the

warrants were within its scope [*Id.* at 14–15]. Finally, the Government contends the affidavits are not bare bones, and the good faith exception applies if the Court finds the warrants lacked probable cause [*Id.* at 17].

At the hearing on Defendant's motion, Defendant maintained the two search warrants lacked probable cause due to the lack of nexus for both addresses and the contradictory statements attributed to the CI, which cast doubt on the CI's credibility. Defendant further explained that typographical errors in the affidavit raise questions about whether the CI was believable and trustworthy. He also maintained that the executing officers exceeded the warrant's scope in seizing jewelry and clothing. In addition, with respect to items seized at the residence, Defendant argued the Government inappropriately relies on information known after the search to establish that the jewelry and clothing were within the scope of the warrant.

The Government argued that the Court should disregard the typographical errors included in the Greenway Drive warrant because they are mistakes by a nonlawyer and the information from the CI and the controlled purchases provide abundant probable cause without regard to the errors. The Government asserted that continual and ongoing drug operations provided the nexus necessary to search the Avebury Lane residence and argued the controlled buys provided probable cause to search the business at Greenway Drive. As to the scope of the warrant, the Government argued the affiant's statement of his experience demonstrates that the jewelry and other items seized from the Avebury residence indicated ownership and proceeds. The Government conceded the affidavit did not reference Defendant's rap name but stated Defendant's rap career was known to investigators. The Government argued it was not a requirement to establish every fact known to them in the probable cause determination. Finally, the Government argued if probable cause is lacking, the warrant is saved by the good-faith exception.

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. A search warrant for a residence must be based upon probable cause and must state the items to be seized with particularity. *Id.*; *Collins v. Virginia*, 584 U.S. 586, 592 (2018) ("At the [Fourth] Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (citations omitted & modified)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). "[P]robable cause is a flexible, common[-]sense standard," causing a person "of reasonable caution" to believe that the items are evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances related in the affidavit. *Gates*, 462 U.S. at 238.

An issuing judge's determination that probable cause exists is entitled to "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238–39. In reviewing the

15

sufficiency of probable cause for a search warrant, the Court considers only the information that was before the issuing judge—that is, the information contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

Defendant here challenges the searches on Fourth Amendment grounds. He contends the affidavits fail to provide probable cause based on allegations of insufficient nexus, an unreliable informant, and stale information for the search of Defendant's home. Defendant also challenges the execution of the search warrant for his residence, arguing officers seized items outside the scope of the search warrant. Finally, Defendant argues the exclusionary rule should apply because the warrants relied upon bare bones affidavits.

The undersigned addresses each argument in turn.

### A. Nexus

Defendant contends the searches of the residence and business violated his rights under the Fourth Amendment because Detective Johnson's affidavits fail to show evidence of drug trafficking would be found at the locations to be searched [Doc. 18 pp. 3–9].

The Fourth Amendment requires that a search warrant be based on an affidavit containing "particularized facts" that demonstrate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). In other words, probable cause requires a "nexus between the place to be searched and the evidence sought." *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). "The connection between the residence and the evidence of criminal activity must be specific and

16

concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595). Assessing whether an affidavit establishes a nexus turns upon the facts of a particular case and requires examination of the totality of the circumstances. *Id.* The Court must determine "whether the [issuing judge] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Merriweather*, 728 F. App'x 498, 504 (6th Cir. 2018) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

### 1.      Avebury Lane (the Residence)

Defendant argues the affidavit for the search of the residence lacked a nexus because no controlled buys occurred at the Avebury address [Doc. 18 p. 6]. Defendant states the only evidence of illegal activity at the Avebury address was the CI's report that he purchased drugs at the residence sometime in the last two years [*Id.*]. Defendant argues that the affidavit's assertion that "Bernard Wilson does not typically sell drugs until he [has] arrived at the 4312 Greenway Drive address for the day" undercuts the contention that illegal activity occurred at the Avebury Lane address [*Id.* at 6–7 (quoting Doc. 18-1 p. 4) (alteration in affidavit)]. Defendant contends the CI's suggestion that he purchased fentanyl from Ms. Sanders, at Defendant's direction, at a location near the residence lacks sufficient specificity, including when the transaction occurred and how close the location was to the residence [*Id.* at 7]. Defendant suggests the affidavit's linking a purple Dodge Challenger to the Avebury Lane address is insufficient to support a nexus because the affidavit only notes that the car was seen parked outside the residence and the car was not seen leaving from or returning to the residence during any of the controlled buys [*Id.*]. Additionally, Defendant states the car is not registered to Defendant [*Id.*]. Defendant argues because the affidavit

lacks any connection that the residence was used or involved in drug trafficking, it fails to establish a nexus and, thus, the affidavit does not contain probable cause to support a search warrant.

Relying on *United States v. Sanders*, 106 F. 4th 455, 466 (6th Cir. 2024) (en banc), the Government responds that probable cause to search a known drug dealer's residence exists where the dealer is engaged in continual and ongoing operations [Doc. 22 p. 8]. It contends Defendant is a known drug dealer based on the CI informing law enforcement that the defendant sold fentanyl to the CI regularly for two years [*Id.* at 10]. It also states the repeated controlled buys over a 100-day period demonstrate Defendant engaged in continuous, organized, and large-scale drug trafficking operations [*Id.*]. Additionally, the Government argues the affidavit directly links Defendant to the Avebury Lane residence through the CI's report and law enforcement surveillance that confirmed Defendant and Ms. Sanders lived at the residence and parked their vehicles there [*Id.* at 10–11]. It points to the statement that Defendant drove the purple Dodge Challenger,[4] which was registered to the residence's address, during two controlled purchases of fentanyl [*Id.* at 11]. The Government also contends Defendant's pattern of life, which included leaving the residence in the morning to go to the business located on Greenway Drive before returning to the residence supported a reasonable inference that Defendant took proceeds with him to the residence [*Id.*]. Finally, the Government argues Defendant's repeated return to the residence reinforces a clear and compelling nexus between Defendant's ongoing drug activities and the residence [*Id.*].

In reply, Defendant asserts that the affidavit lacks specificity to show Defendant was involved in continual and ongoing drug operations, which requires the Government to directly link

---

[4]     The Government's brief refers to the purple Dodge car as a Charger, but the affidavit and Defendant's motion identify the vehicle as a Dodge Challenger. [*See* Doc. 18 p. 2; Doc. 18-1 p. 4]. The Court therefore refers to the purple Dodge vehicle as a Challenger.

18

Defendant's home to his drug activities [Doc. 25 p. 2]. Defendant argues the affidavit did not link Defendant's residence to drug activities; instead, the evidence points to the Greenway Drive address [*Id.* at 3]. At the suppression hearing, Defendant argued that unlike the cases cited by the Government, the affidavit does not show Defendant's residence was a central part of any drug transactions there, which indicates insufficient nexus.

The Sixth Circuit explains an affidavit contains probable cause when it asserts evidence of a defendant's continual drug dealing along with the fact that the defendant resides at an address to be searched. *United States v. Higgins*, 141 F.4th 811, 815 (6th Cir. 2025) (citation modified); *see also United States v. Simmons*, 129 F.4th 382, 387 (6th Cir. 2025) ("Even if no direct evidence ties drug dealing to a home, a nexus exists based on circumstantial evidence if a suspect's drug dealing is ongoing at the time the police seek the warrant." (citation modified)). A defendant's drug dealing activities are continuous and ongoing where the affidavit details "recent, reliable evidence of drug activity," which can be shown by "the quantity of drugs he traffics . . . the repeated nature of the transactions . . . or witness accounts corroborated by an affiant's experience and training." *Id.* at 387 (citation modified). The affidavit here established continuous and ongoing drug activity through the three controlled buys over a 100-day time span, along with the affiant's experience and training.

Even without the continuous-and-ongoing-drug-activity theory, however, the affidavit sufficiently ties the apartment to Defendant's alleged drug-trafficking activities. The CI was able to tell Detective Johnson where Defendant lived based on purchasing fentanyl from Defendant while inside the residence within the past two calendar years [Doc. 18-1 p. 4]. The affiant confirmed the Avebury Lane address supplied by the CI was Defendant's residence through CLEAR database information [*Id.* at 3]. And Detective Johnson observed the vehicles driven by

19

Defendant during the controlled buys with the CI and confirmed the same vehicles were routinely parked outside of the Avebury Lane address [*Id.* at 4–6].

Accordingly, the affidavit contains a sufficient nexus between Defendant's residence and evidence of his ongoing drug activity.

### 2. Greenway Drive (the Business)

Defendant argues Detective Johnson's affidavit also fails to establish a nexus between evidence of drug trafficking and his business because it relies on uncorroborated information provided by the CI [Doc. 18 p. 7]. Defendant contends although the CI claims to have made drug purchases from Defendant at the Greenway Drive address within the past two calendar years, none of these purported transactions were recorded, nor does the affidavit provide their recency [*Id.* at 8]. Defendant also highlights errors in the affidavit, observing that a commercial lot is referred to as "nearby" both the residence and business addresses in the respective affidavits [*Id.*]. Defendant characterizes this and other typographical errors as an "example of the copy/past[e] function gone awry" [*Id.*]. Defendant states that while the affiant states officers surveilled the three controlled buys, he does not mention that officers saw Defendant carrying anything in or out of the Greenway Drive business while monitoring the controlled buys [*Id.*]. Additionally, Defendant argues officers only saw Defendant leave the Greenway Drive address prior to the second and third controlled buys but not before the first controlled buy [*Id.*]. Similarly, Defendant says officers claimed to see Defendant return to the business only after the first controlled buy [*Id.*].

In response, the Government argues the affidavit for the business contains more than sufficient probable cause that the location secreted evidence of Defendant's drug activity [Doc. 22 p. 8]. It contends the information provided by the CI prior to the controlled buys combined with the controlled transactions establish nexus [*Id.*]. The Government states it first had information

20

provided by the CI, which stated defendant distributed fentanyl out of the business at 3410 Greenway Drive [*Id.*]. Additionally, the Government states officers observed Defendant distribute fentanyl during the three controlled purchases [*Id.*]. The Government also states officers watched Defendant return to the business address after the first controlled buy, and they watched Defendant exit the business address before the second and third controlled transactions [*Id.*]. The Government contends the CI's information paired with law enforcement officers' observations establish a nexus between the business at 4312 Greenway Drive and the evidence sought to be seized [*Id.*].

In his reply and at the suppression hearing, Defendant highlighted typographical errors in the affidavits and their effect on the validity of the warrants and probable cause [Doc. 25 p. 4]. In his reply, Defendant states the errors should not be ignored as they represent statements from the CI used as the basis to establish probable cause, and the inaccuracies cannot be overlooked [*Id.*]. At the hearing, Defendant argued the mistakes cast doubt on the credibility of the CI, which should be considered with the totality of the circumstances in determining whether the affidavit establishes nexus. Defendant highlighted the error in the second paragraph of the probable cause section that states, "The CI identified 4312 Greenway Drive as BERNARD WILSON's residence," which is the opposite of the statement in the Avebury Lane affidavit, which states, "The CI identified 5401 Avebury Lane as BERNARD WILSON's residence" [Doc. 18-3 p. 4; Doc. 18-1 p. 4].

Courts in the Sixth Circuit should review typographical errors in a search warrant affidavit with a realistic and "commonsense approach" in assessing probable cause. *See United States v. Sawyers*, 127 F. App'x 174, 181 (6th Cir. 2005) (finding a mistaken use of an incorrect name was a typographical error and would not defeat an otherwise adequate probable cause showing). The

21

undersigned applies this commonsense approach here and determines the poorly utilized copy and paste feature, while unfortunate, does not defeat probable cause. Defendant argued at hearing that because the errors are attributed to the CI, the errors are more damaging to the assertion of probable cause. But the affidavit does not only rely on the CI's statements to establish the Defendant's residence and business. Officers confirmed the address of Defendant's residence and included the mapped location indicating a residence at 5401 Avebury Lane, and Detective Johnson observed the location and verified it himself [Doc. 18-1 p. 4; Doc. 18-2 p. 6]. Additionally, the CI correctly identified the business as being located at 4312 Greenway Drive, which Detective Johnson also personally confirmed through surveillance [Doc. 18-1 p. 4].

As to Defendant's other arguments against nexus, the undersigned must review what is present in the affidavit and whether probable cause existed based on those facts, not what is missing. *Sanders*, 106 F.4th at 464. The affidavit details that Detective Johnson observed Defendant exit the business and travel to the second and third controlled buys documented in paragraphs 1 and 2 in both affidavits [Doc. 18-1 p. 5; Doc. 18-3 p. 5]. And Detective Johnson observed Defendant travel to the business after the first controlled buy documented in paragraph 3 [Doc. 18-1 p. 6; Doc. 18-3 p. 6]. Additionally, Detective Johnson noted Defendant drove the purple Dodge Challenger registered to Ms. Sanders that was routinely parked outside the residence to two controlled buys, and the vehicle was also observed outside the business [Doc. 18-3 p. 4].

The undersigned therefore finds there was sufficient nexus between Defendant's drug activity and the business located on Greenway Drive.

### B.  Reliability of the Confidential Informant

Defendant challenges the reliability of the CI, whom both affidavits describe as untested and as having no previous experience working with law enforcement [Doc. 18 p. 10]. He further

22

contends that although the affiant states the CI's self-incriminating statements were corroborated by officers, how the information was corroborated is absent [*Id.*]. Defendant states conclusory statements are insufficient, and that both affidavits are devoid of any information regarding the CI leading officers to other arrests or prosecutions. [*Id.*]. Defendant also points to the statements indicating the CI identified both addresses (Avebury Lane and Greenway Drive) as Defendant's residence as indications of the CI's unreliability [*Id.*].

The Government responds that the CI did not provide contradictory addresses for Defendant's residence, but instead, the affiant mistakenly typed "Greenway" instead of "Avebury" in several places on the Greenway affidavit [Doc. 22 p. 12]. It contends these typographical errors are not fatal to probable cause because affidavits are reviewed with the understanding that typographical errors sometimes occur in the haste of a criminal investigation [*Id.* at 12]. Additionally, the Government points to other information supplied by the CI and corroborated by officers [*Id.* at 12–13]. The Government also states the CI's participation in controlled purchases provided ample probable cause [*Id.* at 13].

In his reply, Defendant maintains the typographical errors are not trivial [Doc. 25 p. 4]. At the hearing, Defendant argued the erroneous statements are attributed to the CI, and a review of the mistakes in the affidavit combined with the CI being new casts doubt on the credibility of the informant.

"[W]hen information comes from a confidential informant within the criminal milieu, courts proceed with skepticism, and probable cause may hinge upon evidence of the informant's reliability, veracity, and basis of knowledge." *United States v. Dauksys*, No. 6:25-CR-21, 2025 WL 3482852, at *3 (E.D. Ky. Oct. 20, 2025) (citing *United States v. Ketzeback*, 358 F.3d 987, 991 (8th Cir. 2004)), *report & recommendation adopted by* 2025 WL 3281592 (E.D. Ky. Nov. 25,

23

2025). Generally, an informant's self-incriminating statements are deemed intrinsically credible. *See United States v. Gamble*, No. 22-5194, 2022 WL 17456308, at *4 (6th Cir. Dec. 6, 2022) ("[T]he driver, in voluntarily speaking with the officers about the drug transaction, made statements against his own penal interest which further indicated his reliability." (citations modified)); *United States v. Barone*, 584 F.2d 118, 122 (6th Cir. 1978) ("That some of the statements necessarily were against the penal interest of the informant weighs heavily in support of his reliability and is, we have held, a significant and sometimes conclusive, reason for crediting the statements of the informant." (citation modified)). Information from an unknown confidential source may also be corroborated independently by law enforcement. *See United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (finding that "in the absence of any indicia of the [confidential] informants' reliability, courts insist that the affidavit contain substantial independent police corroboration" (citations omitted)). Law enforcement may "employ controlled purchases of illegal narcotics in order to establish probable cause in circumstances where they cannot personally vouch for the reliability and credibility of a particular confidential informant." *United States v. Henry*, 299 F. App'x 484, 487 (6th Cir. 2008).

The affidavits here provide substantial information to corroborate the informant's statements. The affidavits acknowledge that the CI was untested at the time the CI initially supplied information to officers [Doc. 18-1 p. 3; Doc. 18-3 p. 3]. But law enforcement's corroboration cured any lack of reliability. Officers first had the CI name Defendant and correctly identify his photo [Doc. 18-1 p. 3; Doc. 18-3 p.3]. Officers next tested the CI's information by confirming Defendant used an auto garage at the location identified by the CI [Doc. 18-1 p. 4; Doc. 18-3 p. 4]. Officers confirmed the CI's identification of the Avebury Lane address as Defendant's residence by verifying with the CLEAR database and locating the address on a map, which was

24

attached to the affidavit [Doc. 18-1 pp. 3 & 15]. Officers corroborated the CI's information that Defendant used a purple Dodge Challenger by observing Defendant driving the vehicle to two of the controlled buys [Doc. 18-1 pp. 4–6; Doc. 18-3 pp.4–6]. Finally, officers conducted three controlled buys with the CI, each time searching the CI before and after the transaction and confirming the products Defendant sold the CI were illegal narcotics [Doc. 18-1 pp. 5–6; Doc. 18-3 pp. 5–6].

While Defendant points to typographical errors in the affidavits as an issue of the CI's reliability, typographical errors regarding an address independently confirmed by law enforcement do not compromise the corroboration achieved by the KCSO through the controlled buys. Any shadow of unreliability cast by the typographical errors was dispelled by three controlled purchases of fentanyl, with the last occurring just five days prior to the issuance of the warrant [Doc. 18-1 p. 5; Doc. 18-3 p. 5]. In viewing the affidavit as a whole, law enforcement properly corroborated the CI's information. *See United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (explaining courts must "look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit").

Accordingly, the undersigned determines the CI was reliable.

### C. Staleness

Defendant next asserts that much of the information provided by the CI and relied upon in the affidavits was stale [Doc. 18 pp. 10–11].[5] He maintains that the affidavit does not state when drug purchases took place, particularly with respect to the residence on Avebury Lane [*Id.* at 11]. Defendant contends the only allegation of a drug purchase at Avebury Lane occurred sometime

---

[5]    It is unclear whether Defendant asserts staleness with respect to both affidavits, as the argument focuses on Avebury Lane. The Court frames its analysis with respect to the affidavit in support of that search, but because the affidavits are largely similar, the analysis applies to both.

25

within the past two calendar years, which provides no support for finding that evidence of drug sales would remain at the residence [*Id.*]. Defendant argues the staleness of the information regarding the residence combined with the fact that no controlled buys occurred at this address requires suppression [*Id.*].

Assessing whether an affidavit's information is stale requires a case-by-case analysis. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citing *Sgro v. United States*, 287 U.S. 206, 210–11 (1932)). Under this analysis, "the length of time between the events listed in the affidavit and the application for the warrant [is] salient" but not dispositive. *Id.* When considering whether information presented in support of a request for the issuance of a search warrant is stale, the Court considers: "(1) the character of the crime[, whether it is] a chance encounter . . . or a regenerating conspiracy[], (2) the criminal[, whether he is] nomadic or entrenched[], (3) the thing to be seized[, whether it is] perishable and easily transferable or of enduring utility to its holder[], and (4) the place to be searched [whether it is a] mere criminal forum of convenience or secure operational base[]." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (citing *United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006)).

An analysis of these four factors leads to the conclusion that the information in the Avebury Lane affidavit was not stale. Considering the first *Freshette* factor, the affidavit for the residence states the most recent controlled buy took place just five days before the application for the search warrant [Doc. 18-1 p. 5]. This was not a "chance encounter" because the CI and law enforcement participated in multiple drug buys over the 100-day period highlighted in the affidavit [Doc. 18-1 pp. 4–6]. As argued by the Government [Doc. 22 p. 13], "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (citation omitted) (finding that a twenty-three-month-old controlled drug buy from

ongoing enterprise was not stale); *see also United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017) (finding that a three-week-old drug buy not stale); *United States v. Sinclair*, 631 F. App'x 344, 348 (6th Cir. 2015) (finding fifteen-day-old information about drug trafficking not stale); *United States v. Thomas*, 605 F.3d 300, 309–10 (6th Cir. 2010) (finding eight-month-old information about drug manufacturing not stale); *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003) (finding five-month-old information about drug manufacturing not stale); *Spikes*, 158 F.3d at 924 (finding that four-year-old evidence coupled with recent surveillance was not stale when there was ongoing drug trafficking).

Second, Defendant's drug operation was entrenched as the CI informed detectives that Defendant resided at Avebury Lane during the entirety of the investigation and typically sold drugs when he arrived at the business on Greenway Drive, which shows an established base and course of operations [Doc. 18-1 p. 4]. The CI also reported purchasing drugs within the residence and near the residence. He further reported witnessing pound-quantities of fentanyl and methamphetamine in Defendant's possession at the business address even though he traveled to other locations from the business to conduct the drug buys [*Id.* at 4–6]. *See, e.g.*, *United States v. Jefferson*, No. 24-6087, 2025 WL 2674369, at *4 (6th Cir. Sept. 18, 2025) (determining a defendant was entrenched in a house even though multiple locations utilized for drug transactions).

Third, while illegal narcotics, the items to be seized, are perishable and easily transferred, officers here had conducted their most recent drug buy within five days of the issuance of the search warrant, thus minimizing the likelihood that all evidence of the drugs—and the items utilized in the preparation of the drugs—would be eliminated from the places searched.

Finally, the place to be searched was an operational base for Defendant, as the warrant targeted Defendant's established residence, supporting a finding that the evidence was not stale.

The affidavit here outlined evidence of ongoing criminal activity from 100 days before through five days before the signing of the affidavit. Due to the ongoing nature of Defendant's drug sales, the information in the affidavit for the residence (and the business) was not stale.

**D.      Scope**

Defendant next seeks suppression of items taken during the search of the residence, arguing they were seized outside the scope of the warrant [Doc. 18 p. 12]. Defendant contends officers unlawfully seized twelve t-shirts, twelve hats, four medallions, one necklace, four bracelets, one watch, and two CDs, stating those items were not listed on the warrant [*Id.*]. Defendant argues the challenged items do not fall within the categories listed in the warrant including "any goods or instruments used to facilitate or constituting proceeds of the violation of the criminal laws specified above" [*Id.* at 13]. Defendant argues the affidavit does not identify clothing or jewelry as evidence of a crime, and such items are typically found at one's residence [*Id.*]. Defendant submits that seizure of these items exceeded the scope of the warrant because they are not logically connected to the crimes under investigation, nor does the affidavit indicate that the clothing and jewelry seized are evidence [*Id.*].

In response, the Government argues the warrant permitted seizure of the challenged items as "any indicia of ownership, dominion, or control over premises" or "any goods or instruments used to facilitate or constituting proceeds from the violation of the criminal laws" [Doc. 22 pp. 15–16]. The Government asserts the items seized demonstrate Defendant's ownership, dominion or control of the residence as they contain references to his rap name, "Sir Pay Pay" [*Id.* at 16]. It also states Defendant was observed wearing a shirt with the "Sir Pay Pay" logo on the front during a controlled purchase [*Id.* at 16–17]. The Government contends the items bearing Defendant's rap name and logo would indicate ownership, dominion, and control of the residence and, thus, the

28

seizure did not exceed the scope of the warrant. The Government further argues that the items of jewelry seized were evidence of unexplained wealth, which was relevant to the investigation, and officers believed the jewelry was evidence of proceeds of drug sales [*Id.* at 17]. As evidence of proceeds, the Government maintains the seizure of the jewelry did not exceed the scope of the search warrant [*Id.*].

At the suppression hearing, Defendant argued the affidavit for the residence does not contain information on his alleged rap moniker, nor information regarding jewelry or a description of clothing that was used to facilitate any criminal offense. Defendant maintained those facts should have been included in the affidavit, and the Government cannot now say what the affiant meant. While Defendant concedes the unlawful seizure of specific items is not fatal to the entire warrant, he says the clothing and jewelry should be suppressed.

A valid warrant must "particularly describe the things to be seized." *United States v. Whiteside*, 141 F.4th 734, 746 (6th Cir.) (citing *Dalia v. United States*, 441 U.S. 238 (1979)) (quotations omitted), *cert. denied*, 146 S. Ct. 252 (2025). When an officer seizes items not authorized by the warrant, the officer potentially violates the Fourth Amendment. *Id.* at 746–47 (citing *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 554 (6th Cir. 2003)). The Fourth Amendment "generally requires that either an officer request a new warrant to seize items not in the warrant's scope or that an exception to the warrant requirement must apply." *Id.* at 747. At bottom, the execution of a search warrant must be reasonable. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 567 (6th Cir. 2016) (citing *San Jose Charter of Hell's Angels Motorcycle Club v. San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) ("Reasonableness is the touchstone of any seizure under the Fourth Amendment.").

The Government does not argue an exception to the warrant requirement saves the challenged items in the event they are found to be outside the scope of the warrant and, instead, relies on the search warrant and the accompanying affidavit. The search warrant for the residence on Avebury Lane authorizes the seizure of "[a]ny indicia of ownership, dominion, or control over premises to be searched such as rental receipts, mortgage receipts, mortgage payments, utility bills, photographs of any persons involved in criminal conduct," and "[a]ny goods or instruments used to facilitate or constituting proceeds of the violation of the criminal laws specified above" [Doc. 18-2 p. 2]. Furthermore, Detective Johnson's affidavit, which is expressly incorporated into the search warrant [*id.*], indicates that through his experience and training, he has learned drug dealers often "conceal in their residences . . . precious metal, jewelry, and other items of value that are proceeds of such drug transactions" [Doc. 18-1 p. 8].

The undersigned finds the warrant is sufficient with respect to the jewelry (specifically, the medallions, necklace, bracelets, and watch listed in Defendant's motion). While the affidavit does not itemize each type of jewelry, it sufficiently allows for seizure of goods constituting proceeds of the violation of criminal law, which here is drug trafficking. When combined with Detective Johnson's stated experience and training in drug trafficking investigations and his statement that drug dealers often conceal precious metal and jewelry that are proceeds of drug transactions, the warrant does include the seizure of jewelry and similar items that could be determined to be proceeds of drug sales. Accordingly, the undersigned finds the medallions, necklace, bracelets, and watch were properly seized as within the scope of the warrant.

The Court views the items of clothing and CDs differently. While the Government argues the clothing items bearing Defendant's rap moniker, "Sir Pay Pay," indicate dominion and control over the residence, the undersigned finds nothing in the affidavit mentions Defendant's rap

30

moniker either in his background or in Defendant Johnson's descriptions of officer observations during the investigation and controlled buys. Without the Government's after-the-fact explanations, nothing indicates the significance of t-shirts, hats, or CDs bearing the name "Sir Pay Pay" as they relate to the ownership, dominion, or control over the residence. Indeed, the Government cites only documents and information obtained after the search to support its explanation of the items' significance. The t-shirts, hats, and CDs were, therefore, seized outside the scope of the search warrant and must be suppressed.[6]

### E.    Good Faith

Even if the undersigned found the search warrant affidavits failed to establish probable cause, the searches would remain valid because the officers acted in good faith in securing the warrants. *Sanders*, 106 F.4th at 467. "[J]udicial suppression is inappropriate when an officer conducts a search in 'objectively reasonable reliance' on a warrant later deemed to be invalid." *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)); *see also United States v. Herring*, 555 U.S. 135, 141–42 (2009) (rejecting automatic exclusion of evidence and, instead, asking whether exclusion will provide

---

[6] The good faith doctrine does not save law enforcement's conduct in its seizure of items "exceeding the scope of the search warrant, rather than any defect in the search warrant itself." *See United States v. Abdul-Latif*, No. 3:22-CR-68, 2023 WL 8288265, at *14 (E.D. Tenn. Nov. 7, 2023) (citing *United States v. Torres*, No. 3:19-CR-125, 2020 WL 5200951, *14 (E.D. Tenn. June 8, 2020), *report and recommendation adopted*, 2023 WL 8284367 (E.D. Tenn. Nov. 30, 2023); *see also United States v. Taylor*, 121 F.4th 590, 598 (6th Cir. 2024) (finding the good faith exception applies in five circumstances that do not include seizure of evidence outside the scope of a search warrant). The exclusionary rule does not apply when an officer acts in good faith in obtaining the search warrant and "acted within its scope." *Leon*, 468 U.S.at 920. Thus, the good faith exception "applies only when it is the issuing judge, rather than the officer, who erred." *Abdul-Latif*, 2023 WL 8288265, at *14 (citing *United States v. Davis*, 84 F.4th 672, 680-81 (6th Cir. 2023)). This is because "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. White*, 874 F.3d 490, 506 (6th Cir. 2017) (citation modified).

"appreciable deterrence"). This is because "[p]enalizing the officer for the [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. White*, 874 F.3d 490, 505–06 (6th Cir. 2017) (first alteration in original) (quoting *Leon*, 468 U.S. at 921); *see also Neal*, 106 F.4th at 572 (observing that when the affidavit lacks probable cause, "the authorizing judge—not the officer—is the blameworthy party").

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. "Some modicum of evidence, however slight[,] between the criminal activity at issue and the place to be searched" will support an officer's good-faith belief in the existence of probable cause. *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *White*, 874 F.3d at 496). Thus, only when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" will the search fall outside the good-faith exception and the evidence be suppressed. *Neal*, 106 F.4th at 572 (quoting *Leon*, 468 U.S. at 923).

Defendant alleges the affidavits here are "bare bones" affidavits, so the good faith exception cannot apply [Doc. 18 p. 16]. He claims the Avebury Lane address lacks a sufficient connection to unlawful activity, is unconnected to any undercover buys, and the information that the CI purchased drugs there is stale [*Id.*]. Similarly, he asserts that no undercover buys occurred at the Greenway Drive address [*Id.*]. Defendant further raises his prior arguments regarding the CI's unreliability, the "haphazard drafting" of the affidavits that led to "numerous mistakes and contradictory statements," and his belief that officers exceeded the scope of the warrant [*Id.* at 16–17]. Defendant maintains the KCSO "merely speculated" that the two locations would

32

contain evidence of drug trafficking and that "no reasonably well-trained officer could" conclude probable cause existed based upon the facts as stated in the affidavit [*Id.* at 17].

To deem an affidavit "bare bones," the affidavit must be "either completely devoid of any nexus between the illegal activity and the place to be searched or the item to be seized, or merely state suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Sanders*, 106 F.4th at 468 (citation modified). Here, the affidavits meet neither prong. As explained above, the affidavit for Avebury Lane stated a nexus between Defendant's drug activity and the residence based on the continuous and ongoing nature of Defendant's drug trafficking and the connection between the residence and the vehicles used during the controlled buys [Doc. 18-1 pp. 4–6]. The affidavit for Greenway Drive also demonstrated a nexus to the business because Defendant traveled directly from two of the controlled buys back to the business [Doc. 18-3 pp. 4–6]. The CI reported purchasing fentanyl from Defendant inside the residence within the last two years and at the business "numerous times" within the last two years [Doc. 18-1 p. 4; Doc. 18-3 p. 4]. The affidavits established the CI's reliability through the controlled buys as well as officers' independent corroboration of the CI's information [Doc. 18-1 pp. 3–6; Doc. 18-3 pp. 3–6]. These factual allegations in the two affidavits are not mere suspicions or conclusions. Moreover, the affidavits contain much more than the "modicum of evidence" required for the Court to determine there "exists a minimally sufficient nexus necessitating application of the good faith rule." *Sanders*, 106 F.4th at 469 (citation modified).

Accordingly, even if the affidavits did not establish probable cause to search the residence and the business, the undersigned finds the officers acted in good faith reliance on the validity of the search warrants.

33

## III. CONCLUSION

For the reasons discussed herein, the undersigned therefore **RECOMMENDS**[7] that the District Judge **GRANT IN PART** Defendant Wilson's Motion to Suppress [**Doc. 18**], and suppress clothing and CDs seized beyond the scope of the search warrant, and **DENY** the motion in all other respects.

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs*, 829 F.2d 1370, 1373 (6th Cir. 1987).